JAMES McMANIS (40958)
ABIMAEL BASTIDA (303355)
LAURA DIAZ (338006)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:        ldiaz@mcmanislaw.com

Attorneys for Plaintiff,
TOM MOSGROVE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| TOM MOSGROVE, an individual, | Case No.  5:24-cv-00808 |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** |
| COUNTY OF SANTA CLARA, a public entity; CITY OF MORGAN HILL, a municipal public entity; SCOTT MARTIN, an individual; MATTHEW DONATONI, an individual; KATRINA OLSON, an individual; and Does 1 through 50, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**INTRODUCTION**

1. The County of Santa Clara Domestic Violence Protocol for Law Enforcement ("Domestic Violence Protocol") states that "a peace officer shall arrest the suspect" when "the victim is the suspect's spouse, former spouse, cohabitant, fiancée, parent of their child, or a person with whom the suspect has had or is having an engagement relationship or a current or prior dating relationship (emphasis added)."  This protocol requires Morgan Hill Police Department ("MHPD") officers to make an arrest when responding to a domestic violence incident whether or not there is probable cause to do so.

2. The California Legislature found and declared that: "if a suspect commits an assault or battery upon a current or former spouse, fiancé, fiancée, a current or former cohabitant … a peace officer may arrest the suspect without a warrant where both of the following circumstances apply: (1) The peace officer has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed. (2) The peace officer makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed."  Cal. Penal Code § 836 (emphasis added).

3. On February 10, 2022, MHPD officers arrested plaintiff Tom Mosgrove ("plaintiff") pursuant to a domestic violence complaint by his then wife, Wendy Mosgrove ("Wendy" or "Ms. Mosgrove"), enforcing the unconstitutional protocol enacted by the County of Santa Clara and implemented by the City of Morgan Hill and its police department, thereby causing unwarranted harm and injury to plaintiff.  This action is brought to redress the unlawful arrest, harm, damages, and constitutional violations of plaintiff at the hands of defendants.

**JURISDICTION AND VENUE**

4. This action arises under 42 U.S.C. § 1983, the Constitution of the United States, the Constitution of the State of California, and California state law.  The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 1367(a), and jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and F.R.Civ.P. 57.

5. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

1391(b) because the action arises therein, and a substantial part of the events giving rise to this action occurred therein.

### INTRADISTRICT ASSIGNMENT

6.    Assignment of this action to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e), because a substantial part of the events giving rise to the claims alleged herein occurred in the County of Santa Clara.

### PARTIES

7.    Plaintiff Tom Mosgrove is, and at all times herein mentioned was, an individual residing in the County of Santa Clara, State of California.

8.    Defendant Officer Scott Martin ("Officer Martin") is, and at all times herein mentioned was, an officer of the MHPD and an employee of the City of Morgan Hill.  Officer Martin participated in plaintiff's arrest.  Officer Martin is sued in his individual capacity.

9.    Defendant acting Corporal Matthew Donatoni ("Officer Donatoni") is, and at all times herein mentioned was, an officer of the MHPD and an employee of the City of Morgan Hill.  Officer Donatoni participated in plaintiff's arrest.  Officer Donatoni is sued in his individual capacity.

10.    Defendant Officer Katrina Olson ("Officer Olson") is, and at all times herein mentioned was, an officer of the MHPD and an employee of the City of Morgan Hill.  Officer Olson participated in plaintiff's arrest.  Officer Olson is sued in her individual capacity.

11.    Defendant City of Morgan Hill ("City") is, and at all times herein mentioned was, a municipal public entity located in the County of Santa Clara, State of California.  At all relevant times, the City and its policymakers are and were responsible for the policies, procedures, practices, and customs of the City's various agents and agencies, including but not limited to, the MHPD.  At all relevant times, the City and its policymakers had the power and authority to adopt policies and prescribe rules and regulations affecting the operation of the MHPD and its tactics, methods, practices, customs, and usage.  At all relevant times, the City is and was responsible for assuring that the actions, omissions, policies, procedures, tactics, methods, practices, and customs of the MHPD, its employees and agents, including Does 1

2

through 50, complied with the laws of the State of California, federal laws, and the United States Constitution.

12.     The County of Santa Clara ("the County") is, and at all times herein mentioned was, a public entity in the State of California.  At all relevant times, the County and its policymakers are and were responsible for the policies, procedures, practices, and customs of the City's various agents and agencies, including but not limited to, the MHPD.  At all relevant times, the County and its policymakers had the power and authority to adopt policies and prescribe rules and regulations affecting the operation of the MHPD and its tactics, methods, practices, customs, and usage.  At all relevant times, the County is and was responsible for assuring that the actions, omissions, policies, procedures, tactics, methods, practices, and customs of the MHPD, its employees and agents, including Does 1 through 50, complied with the laws of the State of California, federal laws, and the United States Constitution.

13.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-50, inclusive, and therefore sues these defendants by such fictitious names.  They are sued in their individual capacities, and any reference in this complaint to "defendants" also refers to Does 1-50.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the acts, omissions, injuries, and damages herein alleged.

14.     At all times mentioned herein, defendants whose names are unknown to plaintiff, including Does 1-50, inclusive, were employed by the City or the County and acted within the course and scope of their employment.

15.     At all times herein mentioned, defendants, including those sued herein as Does 1 through 50, were the agents, servants, and employees of their co-defendants and in doing the things herein alleged were acting in the scope of their authority as such agents, servants and employees, under the direction and supervision and with the permission and consent of their co-defendants.  At all times herein mentioned, defendants including those sued herein as Does 1 through 50, participated, aided, or conspired in the violation of plaintiff's rights.

3

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.  5:24-cv-00808

## GENERAL ALLEGATIONS

### *Background*

16.    Plaintiff and Ms. Mosgrove were married for approximately twenty-five years. Throughout their marriage, Ms. Mosgrove generally demonstrated a violent temper and was often verbally and physically abusive to plaintiff.

17.    In 2015, without any provocation, Ms. Mosgrove became violent and physical to plaintiff during a family gathering in their home located at 19118 Chinook Ct., Morgan Hill, CA 95037 ("Morgan Hill house").  Ms. Mosgrove assaulted plaintiff with a pellet gun, threatened him with a knife, and threw his clothes out on the front lawn.  Ms. Mosgrove then entered plaintiff's home office and destroyed both his personal and company owned equipment.  Ms. Mosgrove's brother, who was visiting, called the police.  MHPD officers were dispatched to the Morgan Hill house.  Ms. Mosgrove was arrested for this incident and was charged with disorderly conduct.  She was placed on three years of probation and was ordered to take anger management classes.  There were numerous other instances throughout their marriage in which Ms. Mosgrove became violent to plaintiff, locked him out of the house, and threatened him, but the police were never called.

18.    Ms. Mosgrove's violent behavior was not exclusive to plaintiff.  She often had verbal altercations with neighbors, family, and friends.

19.    Before this incident, plaintiff decided to end the marriage.  Plaintiff wanted the divorce to be done amicably and he proposed to Ms. Mosgrove that they retain one attorney.  At the time of this incident, plaintiff and Ms. Mosgrove were still living together at the Morgan Hill house and they had begun talking about divorce.  Plaintiff had found an attorney who suggested he could help them divorce amicably.  Ms. Mosgrove was angry at plaintiff for wanting a divorce and she was highly resistant to meeting with the attorney or to moving forward in any manner to get a divorce.  Plaintiff informed Ms. Mosgrove that he would hire the attorney by February 11, 2022.  Ms. Mosgrove responded that she had made an appointment to meet the attorney on February 10, 2022.

///

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.  5:24-cv-00808

***The Incident***

20.    On the evening of February 10, 2022, plaintiff was home alone at the Morgan Hill house when Ms. Mosgrove returned from a night out with friends.  Plaintiff was under the belief that Ms. Mosgrove had met with the attorney that day regarding their divorce.  When plaintiff asked Ms. Mosgrove about her meeting with the attorney, she dismissed him and became verbally abusive.  Ms. Mosgrove was still angry with plaintiff about the divorce when she walked away from the conversation and went upstairs.  Plaintiff joined Ms. Mosgrove upstairs still trying to talk to her.  Ms. Mosgrove walked inside the bedroom walk-in closet.  Without provocation, she continued verbally to assault plaintiff, demanded that he stay away from the closet, and threatened to call the police.  Ms. Mosgrove then said, "let's see how you like being arrested," and called the MHPD.  Plaintiff left the room and did not hear the 911 telephone conversation between Ms. Mosgrove and the MHPD.

21.    At about 8:14 p.m., MHPD Officer Martin, acting Corporal Donatoni, and Officer Olson arrived at the Morgan Hill house.  The officers were dispatched to investigate Ms. Mosgrove's claims that plaintiff had pushed her into a bedroom closet and used his body physically to block her from leaving the closet.

22.    When the officers arrived at the Morgan Hill house, plaintiff opened the front door and greeted them.  Plaintiff walked outside with Officer Martin.  Acting Corporal Donatoni and Officer Olson walked inside the residence, where they remained with Ms. Mosgrove.

23.    While detained outside his home and waiting for the other officers, plaintiff was informed, by at least one officer, that whenever MHPD officers are dispatched for a domestic violence incident, someone must be arrested without exception.  Plaintiff was also told that he was "most likely" going to be the person getting arrested.  About thirty minutes elapsed from the time that the officers arrived and when plaintiff was handcuffed and placed inside a marked police vehicle.  During those thirty minutes, MHPD officers had plaintiff under arrest.

24.    Plaintiff denied that this was a domestic violence incident because he had not been physically or verbally abusive to Ms. Mosgrove.  He did not block or impede her from exiting the closet.  He did not touch her in a harmful or offensive manner, nor did he violate her

5

personal liberty.  In fact, plaintiff did not touch Ms. Mosgrove at all.

25.    Both plaintiff and Ms. Mosgrove were assessed for physical injuries or signs of an altercation.  None were found either on plaintiff or on Ms. Mosgrove.  Neither were there any signs of a struggle or physical altercation inside the Morgan Hill house.

26.    Without any finding of probable cause to believe that plaintiff had committed an assault or battery, MHPD officers declared him to be the primary aggressor.  Plaintiff was then informed that he was under arrest and that he would be transported to the Morgan Hill Police Department.

27.    Plaintiff suffers from Parkinson's disease, glaucoma, diabetes, high blood pressure, anxiety, and seizures.  He takes daily medication to control his symptoms.  At the time of his arrest, plaintiff asked to take his medication with him, which he was allowed to do.  He was escorted by one officer inside the home to gather his personal property.

28.    Plaintiff was then escorted back to the front yard where the officers read him his Miranda rights, handcuffed him, and placed him in the back of a marked police vehicle.

29.    Plaintiff was arrested for violations of Penal Code section 243(e)(1), a misdemeanor domestic violence battery of spouse and Penal Code section 236, a misdemeanor false imprisonment.

30.    Plaintiff was then transported to the Morgan Hill Police Department.

31.    At the MHPD, plaintiff said multiple times that he needed to take his evening medication and he asked to see a doctor but his requests were denied.  When plaintiff informed staff at MHPD that he needed to take his daily medication and explained his specific health conditions, he was denied access to his medication and told he was not allowed to take any unknown substances.

32.    After further questioning at the MHPD, plaintiff was placed inside a van and was handcuffed to a bench.  He was then transported to the Santa Clara County main jail in San Jose, California.  The MHPD officers gave plaintiff's medication to the Santa Clara County Sheriff's Office.  Plaintiff was again handcuffed to a bench for approximately three hours, overnight.

33.    At approximately 6:00 a.m. on February 11, 2022, plaintiff was placed inside a

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.  5:24-cv-00808

jail cell at the Santa Clara County main jail.

34.     Plaintiff repeatedly explained his medical condition to defendants and asked for his medication and asked to see a medical professional.  Each time his requests were ignored or denied.

35.     For several days, and while under arrest and under the confinement and custody of defendants, plaintiff was denied his medication entirely.  Defendants placed plaintiff at substantial risk of suffering serious harm.

36.     At approximately 8:00 p.m. on February 12, 2022, after the third day without his medication, plaintiff passed out inside his jail cell.  He was taken to the emergency room where he remained overnight handcuffed to a hospital bed.  Plaintiff was transported back to the Santa Clara County main jail on February 13, 2022, between 6:00 a.m. and 7:00 a.m., despite still feeling ill.

37.     More than 48 hours after plaintiff had been initially placed inside the jail cell and denied his medication resulting in a trip to the emergency room, the officers began giving plaintiff some of his medication, not all.  It was given to him on a set schedule created by the jail guards and not when plaintiff needed to take the medication as prescribed.

38.     Plaintiff was kept inside his jail cell all of February 14, 2022.  He was told it was because jail staff were having problems with the cell door.

39.     Plaintiff was finally released on February 15, 2022, at approximately 10:00 a.m., after his sister tracked him down and posted bail.  Ms. Mosgrove did not notify any family members that plaintiff had been arrested.  Following his release, plaintiff was served with divorce papers and a temporary restraining order.

40.     Plaintiff received two documents from the MHPD dated March 11, 2022.  The first was an update and status of the investigation pursuant to his arrest providing that the District Attorney's office had reviewed the case and declined to prosecute.  The second was a document titled, "Detention Certificate."  The document stated: "As required by the provisions of Penal Code section 851.6, I hereby certify that the taking into custody of Tom Mosgrove on 2/10/2022 by the Morgan Hill Police Department was a detention only, not an arrest. Tom Mosgrove was

7

released on 2/10/2022 by the Morgan Hill Police Department."

41.    Notwithstanding the "Detention Certificate" he received, plaintiff was arrested–not detained–by MHPD officers on February 10, 2022.  Plaintiff was handcuffed and transported by MHPD officers.  Plaintiff was not free to leave at any point starting when the MHPD officers arrived at his front door.  He spent approximately six days and five nights in the Santa Clara County main jail.  He was never charged for the alleged misdemeanor violations that led to his arrest on February 10, 2022.

42.    Plaintiff's arrest was an unreasonable seizure given that the MHPD officers acted on the Santa Clara County Domestic Violence Protocol which requires in all cases that there be an arrest for a misdemeanor assault or battery against the suspect's spouse or former spouse with or without probable cause.  The MHPD officers acted intentionally and without probable cause when they arrested plaintiff.

43.    Under these circumstances, no police officer could have concluded that probable cause existed to arrest plaintiff, especially when MHPD officers had no other reason to think that plaintiff was the aggressor.

44.    Plaintiff is informed and believes, and thereon alleges, that Officer Martin, acting Corporal Donatoni, and Officer Olson received no training or supervision from the MHPD in the application of Penal Code section 836(d) during the investigation of domestic violence incidents and the constitutional requirement of having probable cause when making an arrest.  Instead, the MHPD officers were required to enforce the unconstitutional policy adopted by the MHPD and allowed to violate constitutional protections under the supervision and training of the MHPD.

45.    As a direct and proximate result of the actions and omissions of defendants described herein, plaintiff suffered personal injury, bodily injury, physical pain, and deprivation of his constitutional rights, according to proof at the time of trial.

***The Customs, Policies, and Practices of the County of Santa Clara and the City of Morgan Hill, and Their Failure to Supervise and Train Police Officers***

46.    Plaintiff's injuries were the result of the domestic violence customs, policies, or practices implemented by the County of Santa Clara and the City of Morgan Hill, including, but

8

not limited to, the MHPD.  The County and the City knew, or should have known such customs, policies, or practices would likely result in the deprivation of the Fourth and Fourteenth Amendment Constitutional rights of plaintiff, including plaintiff's false arrest and false imprisonment.  These customs, policies, and practices relate to the enforcement of the unconstitutional policy requiring an arrest be made in all domestic violence incidents absent probable cause.

47.    The Domestic Violence Protocol was developed in 1993 at the request of the Police Chiefs' Association of Santa Clara County and the Domestic Violence Council.  This Domestic Violence Protocol is updated annually by the Domestic Violence Council Protocol subcommittee for the law enforcement community to enforce.  The MHPD is explicitly listed as a member under the jurisdiction of the Domestic Violence Protocol, the department has participated in the review process, and has recommended amendments and updates.

48.    The specific policy within the Domestic Violence Protocol in effect at the time of plaintiff's arrest is entitled, "PATROL OFFICER RESPONSE/INVESTIGATION," section A "ENFORCEMENT OF LAWS IN DOMESTIC VIOLENCE INCIDENTS."  The relevant policy provides as follows: "When a misdemeanor assault or battery has been committed outside the officer's presence, and the victim is the suspect's spouse, former spouse, cohabitant, former cohabitant, fiancée, parent of their child, or a person with whom the suspect has had or is having an engagement relationship or a current or prior dating relationship, a peace officer shall arrest the suspect without the need of a private person's arrest."

49.    California Penal Code section 836(d) states: "if a suspect commits an assault or battery upon a current or former spouse, fiancé, fiancée, a current or former cohabitant … a peace officer may arrest the suspect without a warrant where both of the following circumstances apply: (1) The peace officer has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed. (2) The peace officer makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed."  (emphasis added).

9

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.   5:24-cv-00808

50. The Domestic Violence Protocol also provides that for all arrests made for charges that include "PC 243(e)(1) – misdemeanor domestic violence", as it appears on plaintiff's police report, then "[a]dult arrestees must be taken to jail, after which they may post bail."

51. Upon information and belief, the City, County, and its agencies, including, but not limited to the MHPD, adopted a "pro arrest policy" in domestic violence incidents and required its officers or agents to make an arrest, including unconstitutional arrests, without probable cause.

52. Plaintiff's injuries were the result of the City's and the County's customs, policies, and practices, including the failure to supervise and train police officers to avoid violations of Constitutional rights under the Fourth and Fourteenth Amendments of members of the public in the performance of their duties in enforcing the unconstitutional policy.

53. Plaintiff is informed and believes, and thereon alleges, that the MHPD and other police agencies in the County of Santa Clara conducted no ongoing training for patrol officers regarding the enforcement of the Domestic Violence Protocol as it was used against plaintiff.

54. Plaintiff is informed and believes, and thereon alleges, that the MHPD and other police agencies in the County of Santa Clara conducted no ongoing training to officers and supervisors on domestic violence incidents, in part because such mass trainings require time away from already depleted patrol staffing.

55. Plaintiff is informed and believes, and thereon alleges, that the MHPD, other police agencies in the County of Santa Clara, the City, and other cities in the County, and the County, not only allowed, but required their police officers to make unconstitutional arrests under their supervision.

56. Despite the lack of training and supervision, the County, the City, and other Santa Clara County cities allowed officers to report to alleged domestic violence calls and investigate domestic violence incidents and conduct unconstitutional arrests without having probable cause.

57. On information and belief, defendants, including Does 1-50, were allowed to report to and investigate domestic violence incidents and conduct unconstitutional arrests

10

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No. 5:24-cv-00808

without having probable cause, under the supervision of the MHPD, the City, or the County.

58.    Violations of constitutional rights are a highly predictable consequence to making arrests without any probable cause.

### FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fourth Amendment – Unreasonable Seizure**

**(Against All Defendants)**

59.    Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

60.    On February 10, 2022, plaintiff was seized and arrested at his Morgan Hill house by MHPD officers, intentionally, maliciously and without a warrant or order of commitment or any other legal authority of any kind, when plaintiff had not committed any crime.

61.    MHPD officers seized plaintiff when they restrained his liberty through a show of authority when they approached his home and questioned him.  Based on the presence of multiple armed police officers at his doorstep, plaintiff did not reasonably believe that he was free to leave the encounter with defendants.

62.    In seizing and arresting plaintiff, MHPD officers acted intentionally.

63.    Defendants had no probable cause to believe that an offense had occurred or that plaintiff had committed it.  Plaintiff's seizure was unreasonable due to a lack of probable cause. At the time of the arrest, neither plaintiff nor Ms. Mosgrove had any visible injuries.  Plaintiff refuted any claims that he was physically or verbally abusive towards Ms. Mosgrove or that he impeded her exit from a closet.  Plaintiff did not touch Ms. Mosgrove in a harmful or offensive manner, nor did he violate her personal liberty.  Plaintiff did not touch Ms. Mosgrove at all.

64.    In arresting plaintiff, despite the lack of evidence constituting probable cause, and without a warrant, defendants subjected plaintiff to an unlawful seizure.  In doing the acts alleged herein, defendants deprived plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

65.    In doing the acts alleged herein, defendants were acting under color of state law.

66.    In violating plaintiff's constitutional rights, defendants were acting in accordance

11

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.  5:24-cv-00808

with customs, policies, and practices of the City, the County, other cities in the County, and the MHPD, which proximately caused the harm, damages, and constitutional violations alleged herein.  Defendants failed to ensure that only officers who had received adequate training were allowed to respond to the alleged domestic violence incident reported at plaintiff's residence. Defendants further failed to ensure that any training provided was adequate to apprise officers of the circumstances under which a lawful arrest may be executed upon a finding of probable cause. Defendants required MHPD officers to make unconstitutional arrests in all domestic violence incidents in which the victim is the suspect's spouse, former spouse, or cohabitant, in clear violation of California Penal Code section 836(d) which although mentioned in the Domestic Violence Protocol is not applied in practice.  Defendants knew, or should have known, such customs, policies, and practices would likely result in the deprivation of the Fourth and Fourteenth Amendment Constitutional rights of plaintiff, including plaintiff's unreasonable seizure.  Such failure amounts to deliberate indifference to the rights of persons with whom the defendants come into contact.

67.     As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiff suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial.

68.     Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of exemplary and punitive damages.

69.     An actual controversy exists between plaintiff and defendants because the County's and City's customs, policies, and practices requiring an arrest be made in all domestic violence incidents without a finding of probable cause, is unconstitutional and unenforceable because it results in the deprivation and violation of the Fourth and Fourteenth Amendments of the United States Constitution.

70.     A present controversy exists between plaintiff and defendants, in that defendants have violated, threaten to violate, and continue to violate the Fourth and Fourteenth Amendments of the United States Constitution.

12

71. Because an actual and present controversy exists among the parties, a declaration of the rights and responsibilities of the parties with respect to compliance with state and federal Constitutional rights is necessary.

72. Plaintiff seeks a declaration from this Court of the following: a declaration, order, and judgment that the defendants' customs, policies, and practices of requiring an arrest be made in all domestic violence incidents without a finding of probable cause, is unconstitutional and unenforceable because it results in the deprivation and violation of the Fourth and Fourteenth Amendments of the United States Constitution.

73. Defendants are causing irreparable injury to citizens and residents of the County, and its cities, by violating Santa Clara County and City of Morgan Hill residents' Fourth and Fourteenth Amendment rights of the United States Constitution. Defendants will continue to do so unless such conduct is enjoined.

74. Plaintiff seeks a permanent injunction enjoining defendants and their agents, agencies, servants and employees, and all other persons acting under, in concert with, or for defendants from adhering to the County's Domestic Violence Protocol and requiring an arrest be made in all domestic violence incidents without a finding of probable cause.

WHEREFORE, plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

Plaintiff has been damaged by the foregoing acts of defendants, and each of them, in an amount according to proof at trial. Plaintiff seeks as relief, without limitation, the following:

1. General damages;

2. Special damages, including but not limited to past and future medical expenses;

3. Punitive damages against the individual defendants, as allowed by law;

4. Civil penalties, as allowed by law;

5. A declaration, order, and judgment that the defendants' customs, policies, and practices of requiring an arrest be made in all domestic violence incidents without a finding of probable cause, is unconstitutional and unenforceable because it results in the deprivation and violation of the Fourth and Fourteenth Amendments of the United States Constitution;

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No. 5:24-cv-00808

6.     A permanent injunction enjoining defendants and their agents, agencies, servants and employees, and all other persons acting under, in concert with, or for defendants from adhering to the County's Domestic Violence Protocol and requiring an arrest be made in all domestic violence incidents without a finding of probable cause;

7.     Pre-judgment and post-judgment interest;

8.     Attorneys' fees;

9.     Costs of suit; and

10.    Such other and further relief as the Court may deem proper.

DATED:  February 9, 2024                     McMANIS FAULKNER


                                             /s/ *Laura Diaz*
                                             JAMES McMANIS
                                             ABIMAEL BASTIDA
                                             LAURA DIAZ

                                             Attorneys for Plaintiff,
                                             TOM MOSGROVE

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No. 5:24-cv-00808

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Amendment VII to the United States Constitution and Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  February 9, 2024                                   McMANIS FAULKNER


                                                                          */s/ Laura Diaz*
                                                                          JAMES McMANIS
                                                                          ABIMAEL BASTIDA
                                                                          LAURA DIAZ

                                                                          Attorneys for Plaintiff,
                                                                          TOM MOSGROVE

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.  5:24-cv-00808