# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| TOM MOSGROVE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>　　　　Defendants. | Case No.  24-cv-00808-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>[Re:  ECF Nos. 84, 88] |

Plaintiff Tom Mosgrove ("Plaintiff") brings this action alleging violations of 42 U.S.C. § 1983 ("Section 1983") against the City of Morgan Hill ("City"), Morgan Hill Police Officers Scott Martin ("Officer Martin"), Matthew Donatoni ("Officer Donatoni"), Katrina Olson ("Officer Olson"), and other unnamed police officers (collectively, "City Defendants"), and the County of Santa Clara ("County"). ECF 81. Before the Court are two motions to dismiss the Second Amended Complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(6), the first brought by County, and the second brought by City Defendants. ECF 84, 88. Plaintiff opposed to both motions. ECF 93. County and Morgan Hill Defendants filed replies. ECF 94, 95. The Court held a hearing on the two motions to dismiss on April 17, 2025. ECF 98.

For the reasons stated below, the Court rules as follows: 1) GRANTS County's motion to dismiss WITHOUT LEAVE TO AMEND, and 2) GRANTS Morgan Hill Defendants' motion to dismiss WITHOUT LEAVE TO AMEND.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff filed this action on February 9, 2024. ECF 1.  The following facts are taken from the SAC and are accepted as true for purposes of the motions to dismiss.

//

***Plaintiff's Arrest***

On February 10, 2022, at about 8:14pm, Officers Martin, Donatoni, and Olson (collectively, "MHPD Officers") from the Morgan Hill Police Department ("MHPD") arrived at Plaintiff's house in Morgan Hill to investigate a domestic violence allegation. SAC ¶¶ 22-23. The officers were dispatched because Plaintiff's wife, Wendy Mosgrove ("Ms. Mosgrove") called 911 and alleged that "[P]laintiff had pushed her into a bedroom closet and used his body physically to block her from leaving the closet." *Id.* Upon arrival, the Officers separated Plaintiff and Ms. Mosgrove. *Id.* ¶ 24. Plaintiff walked outside with Officers Martin and Donatoni and Officer Olson walked inside the residence and remained with Ms. Mosgrove. *Id.* While Plaintiff was detained outside his home, he denied Ms. Mosgrove's allegation that he physically or verbally abused Ms. Mosgrove, that he blocked or impeded Ms. Mosgrove from exiting the closet, that he touched Ms. Mosgrove in a harmful or offensive manner, and that he violated Ms. Mosgrove's personal liberty. *Id.* ¶ 25. While detained outside of his home, Plaintiff was informed by at least one officer that "whenever MHPD officers are dispatched for a domestic violence incident, someone must be arrested without exception." *Id.* ¶ 26.

Eight minutes after the MHPD officers arrived at Plaintiff's house, the MHPD Officers decided to arrest Plaintiff. *Id.* ¶ 27. Plaintiff alleges that his arrest was without probable case. *Id.* After Officer Martin initiated the arrest protocol, he spoke with Plaintiff's son Maxwell William Mosgrove ("Max"). *Id.* ¶ 28. Officer Martin told Max that "[it was] going to be an official arrest and [Plaintiff was] going to have to see a judge because [it was] an allegation of domestic violence and so because California is a mandatory arrest state he's going to have to see a judge." *Id.* Max explained the dynamics of his parents' relationship to Officer Martin and told Officer Martin that he had never seen Plaintiff "get violent," or "touch [] or hit [Ms. Mosgrove]." *Id.* ¶ 29. Officer Martin told Plaintiff that "there were allegations made of domestic violence so in California as peace officers we are mandated to take action." *Id.* ¶ 31. Officer Martin also informed Plaintiff that he was arrested for "domestic violence" based on his "marital status and [Ms. Mosgrove's] allegation of physical violence." *Id.* ¶ 34.

Plaintiff was arrested for violation of California Penal Code section 243(e)(1), misdemeanor

1  domestic violence battery of spouse, and California Penal Code section 236, misdemeanor false
2  imprisonment. *Id.* ¶ 36. Plaintiff spent about five days in the Santa Clara County main jail. *Id.* ¶ 48.
3  Plaintiff was not charged for the alleged misdemeanors that led to his arrest. *Id.*

***Defendants' Unwritten Policy, Custom, or Practice***

Plaintiff alleges that "[t]he County, and the City, including the MHPD, worked in concert with one another to establish a longstanding, widespread, or well-settled custom or practice of making unlawful arrests or seizures in all cases involving domestic violence allegations, regardless of probable cause and without justification." *Id.* ¶ 52. Plaintiff alleges that, in 1993, the County, the Police Chiefs' Association of Santa Clara County ("Association") and the County of Santa Clara Domestic Violence Council jointly developed the Domestic Violence Protocol for Law Enforcement ("Domestic Violence Protocol"). *Id.* ¶ 53. Plaintiff alleges that, since 1993, the County, other County department heads, the City, and other law enforcement agencies within Santa Clara County "participate in meetings or otherwise jointly collaborate" to develop, review, and update the written Domestic Violence Protocol." *Id.* ¶ 55. Plaintiff alleges that, "as a result of those meetings or otherwise joint collaboration, the County, the City, and/or other law enforcement agencies within Santa Clara County, have [also] established a custom or practice of making arrests when responding to domestic violence incidents regardless of probable cause or without justification." *Id.* ¶ 55. Plaintiff alleges that, through "joint collaboration," the written Domestic Violence Protocol and the unwritten custom or practice "is uniformly implemented throughout law enforcement agencies in Santa Clara County." *Id.* ¶ 57. Plaintiff does not allege that the written Domestic Violence Protocol is unconstitutional.

In addition to Plaintiff's arrest, Plaintiff identifies two separate domestic violence arrests "within Santa Clara County." *Id.* ¶ 62. First, on November 8, 2021, the Sunnyvale Police Department arrested Neel Mehta ("Mr. Mehta") pursuant to the City of Sunnyvale's policy on domestic violence. *Id.* ¶ 62(a). On February 3, 2024, the Santa Clara County Sheriff's Office arrested Paul Davis ("Mr. Davis") in response to a call about domestic violence. *Id.* ¶ 62(b). Mr. Davis was not charged for domestic violence. *See id.* Plaintiff alleges that these arrests were made without probable cause. *Id.* ¶ 61.

### B. Procedural History

On April 25, Plaintiff filed the First Amended Complaint ("FAC") against the City Defendants, the County, the Association and District Attorney Jeffrey F. Rosen ("D.A. Rosen"). ECF 31. On May 9, 2024, City Defendants answered the FAC. ECF 38. On May 28, 2024, the County and D.A. Rosen moved to dismiss the FAC. ECF 41. On June 18, 2024, the Association moved to dismiss the FAC. ECF 41, 49. On August 7, 2024, the Court granted the County's and the Association's motions to dismiss with leave to amend and granted D.A. Rosen's motion to dismiss without leave to amend. *See* ECF 74.

On December 17, Plaintiff filed the SAC. ECF 81. In the SAC, Plaintiff dropped his claims against the Association. *See* SAC.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court needs not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint does not need to contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." *Id.*

In deciding whether to grant leave to amend following dismissal, or pursuant to Federal Rule of Civil Procedure 15(a), the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence*

*Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party that carries the greatest weight. Id. Moreover, the proposed addition of new claims unrelated to the claims and defenses in the original complaint may be grounds for denial leave to amend. *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend not abuse of discretion where proposed new claims would have "greatly altered the nature of the litigation" and required defendants to undertake "an entirely new course of defense"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of leave to amend where additional claims "advance different legal theories and require proof of different facts").

## III.     REQUEST FOR JUDICIAL NOTICE

The County requests that the Court take judicial notice of the Domestic Violence Protocol and the Morgan Hill Police Department Policy Manual ("MHPD Policy Manual"). ECF 86. The Domestic Violence Protocol and the MHPD Policy Manual are both available online and are referenced in the SAC. ECF 86 at 2-3; *see* ECF 81 ¶¶ 13, 30, 52, 59, 64, 75. The Domestic Violence Protocol and the MHPD Policy Manual are properly subject to judicial notice because the documents are incorporated by reference into the SAC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiff has not objected. Thus, the Court GRANTS the County's request.

## IV.     DISCUSSION

Plaintiff brings a single claim of unreasonable seizure in violation of the Fourth Amendment and the Fourteenth Amendment against the MHPD Officers, and a claim under 42 U.S.C. § 1983 against the County and the City based on liability under *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978). *See* SAC ¶¶ 67-84.

### A. Fourth and Fourteenth Amendment Violation against the City Defendants

Plaintiff alleges that his "unlawful seizure" claim is brought under the Fourth Amendment and the Fourteenth Amendment. SAC ¶¶ 5, 37, 63, 73, 75-76, 79-80, 82-83. City Defendants argue that Plaintiff's "unlawful seizure" claims are untenable under the Fourteenth Amendment. *See* ECF

88 at 8 n.2.; ECF 94 at 5 n.1. Plaintiff has not advanced any argument on how his "unlawful seizure" claim can be brought under the Fourteenth Amendment. *See* ECF 93; *see also* ECF 94 at 5 n.1.

Because Plaintiff's "unlawful seizure" claim is brought on the basis that his warrantless arrest was without probable cause and was unlawful, his claim should be analyzed under the Fourth Amendment, not the Fourteenth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quotation omitted).

Accordingly, the Court GRANTS City Defendants' motion to dismiss on the basis that Plaintiff's "unlawful seizure" claim is improperly brought under the Fourteenth Amendment.

### B. Fourth Amendment Violation against the City Defendants

City Defendants argue that the SAC shows Plaintiff's arrest did not violate his Fourth Amendment right because it was supported by probable cause and was lawful. ECF 88 at 6; ECF 94 at 2. In response, Plaintiff argues that he has alleged facts to state that "he was unlawfully arrested by MHPD officers without establishing probable cause and in violation of his Fourth Amendment rights." ECF 93 at 10. Plaintiff further argues that the existence of probable cause is a question of fact that cannot be resolved at a motion to dismiss stage. *Id.* at 11.

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001)). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Garcia v. Cty. of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to the officers

at the time of the search.' " *Lacey*, 693 F.3d at 918 (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (internal quotation omitted).

Plaintiff was arrested for violations of 1) California Penal Code section 243(e)(1), misdemeanor domestic violence battery of spouse, and 2) California Penal Code section 236, misdemeanor false imprisonment. *See* SAC ¶ 36.

Under California law, a peace officer may arrest a suspect who "commits an assault or battery upon a current or former spouse" without a warrant if the peace officer "has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed" and "makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed." California Penal Code §836(d). "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." California Penal Code §240. "A battery is any willful and unlawful use of force or violence upon the person of another." California Penal Code §242.

The SAC alleges that MHPD Officers Martin, Donatoni, and Olson arrived at Plaintiff house in Morgan Hill in response to Ms. Mosgrove's 911 call and "allegations that [P]laintiff had pushed her into a bedroom closet and used his body physically to block her from leaving the closet." SAC ¶¶ 22-23. The SAC alleges that, upon the MHPD Officers' arrival, Plaintiff walked outside of his house with Officers Martin and Donatoni, and Officer Olson walked inside his house and remained with Ms. Mosgrove. *Id*. ¶ 24. The SAC alleges that Plaintiff "denied that this was a domestic violence incident." *Id*. ¶ 25. The SAC alleges that, eight minutes after the MHPD Officers arrived at Plaintiff's house, they decided to arrest Plaintiff. *Id*. ¶ 27. The SAC also alleges that Officer Martin advised Plaintiff that Ms. Mosgrove made "allegations [] of domestic violence" against him, and that Plaintiff was charged with domestic violence "based on [his] marital status and [Ms.

7

Mosgrove's] allegation of physical violence." *Id*. ¶¶ 31, 34.

Taking facts pled in the SAC as true, Plaintiff has failed to adequately allege that there was no probable cause for his arrest. Instead, he has pled all the facts necessary to establish probable cause. Here, the MHPD Officers arrested Plaintiff based on the report by Ms. Mosgrove that Plaintiff "had pushed [Ms. Mosgrove] into a bedroom closet and used his body physically to block her from leaving the closet." SAC ¶ 23. While Plaintiff also alleges that he was informed "by at least one officer, that whenever MHPD officers are dispatched for a domestic violence incident, someone must be arrested without exception," and that the MHPD Officers "failed to conduct a thorough investigation as outlined by the MHPD Policy Manual," SAC ¶¶ 26, 30, these allegations do not establish that Plaintiff's arrest was unreasonable. *See Garcia*, 639 F.3d at 1209. The officers' subjective intent is not relevant to a determination of probable cause. Plaintiff has alleged no facts from which it could be reasonably inferred that the MHPD Officers did not believe Ms. Mosgrove's eyewitness account of the incident. Additionally, when the full text of the MHPD Policy Manual is considered, ECF 43-1, there are no facts alleged to support Plaintiff's allegation of an incomplete investigation by the MHPD Officers.

The Court is also unpersuaded by Plaintiff's argument that "the facts or circumstances surrounding" Plaintiff's arrest are disputed and that whether the MHPD Officers had probable cause to arrest Plaintiff is a question of fact for the jury. ECF 93 at 9, 11. While Plaintiff also alleged that he denied Ms. Mosgrove's domestic violence allegations and that Max told Officer Martin that he "[had] never seen [Plaintiff] get violent" or touched or hit Ms. Mosgrove, SAC ¶¶ 25, 29, 33, the MHPD Officers were not required to accept those denials or explanations. *See D.C. v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). Indeed, the MHPD Officers were not required to determine whether the alleged domestic violence "ha[d] in fact been committed." California Penal Code §836(d).

The Court further finds that the authorities cited by Plaintiff are unpersuasive. *See* ECF 93 at 9-10 (citing *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 404 (N.D. Cal. 2021) *Mehta v. City of Sunnyvale*, 721 F.Supp.3d 1041, 1048 (N.D. Cal. 2024), and

*Williams v. Cty. of Alameda*, 26 F.Supp.3d 925, 943 (N.D. Cal. 2014)). In *NAACP*, the Court found that whether the police officers falsely arrested plaintiffs based on a curfew order was a qualified immunity issue that required an evidentiary record. *NAACP*, 562 F. Supp. 3d at 404. In *Mehta*, the Court found the plaintiff adequately pled a lack of probable cause for his arrest because he was the reporting party, claiming to have been assaulted by his wife and that the police officers fabricated evidence about the wife's injuries in their police report. *Mehta*, 721 F.Supp.3d at 1048. In *Williams*, the Court found that, based on the allegation that Plaintiff was arrested about 30 minutes after a young boy called to report that his parents were "about to fight," but there were no allegations in the operative complaint to demonstrate probable cause for Plaintiff's arrest. *Williams*, 26 F.Supp.3d at 943. Unlike those three cases, here, the facts alleged in the SAC, do not support Plaintiff's conclusory claim that the MHPD officers lacked probable cause to arrest him. And, once finding probable cause, the MHPD Officers had no further duty to look for additional evidence to negate probable cause before the arrest. *See* SAC ¶¶ 22-23, 31, 34; *see also Keel v. City of Rohnert Park*, No. 4:21-CV-02235-KAW, 2021 WL 6551423, at *3 (N.D. Cal. Dec. 15, 2021) (holding there was probable cause for plaintiff's arrest based on facts alleged in the complaint).

The Court also notes that Plaintiff again attempts to supplement his pleadings with the declaration of Laura Diaz, Plaintiff's counsel, and body camera videos of Officers Martin and Olson. *See* ECF 93 at 10-11 (citing ECF 93-1 Declaration of Laura Diaz in Support of Plaintiff's Opposition, ECF 93-2, ECF 93-3, ECF 93-4). But "new allegations contained in [Plaintiff's] opposition [to a motion to dismiss] are irrelevant for Rule 12(b)(6) purposes." *Schneider v. California Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). That evidence is disregarded.

For the above reasons, the Court finds that Plaintiff has alleged the existence of probable cause for his arrest, rather than its absence. Accordingly, the Court GRANTS City Defendants' motion to dismiss on the basis that Plaintiff has failed to adequately plead his "unlawful seizure" claim under the Fourth Amendment in the SAC.

### C. *Monell* Liability against the City and the County

Plaintiff asserts a claim under 42 U.S.C. § 1983 against both the City and the County for violations of his Fourth and Fourteenth Amendment right against unreasonable seizure under *Monell*

*v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978). SAC ¶¶ 73, 75, 76, 79.

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official . . . policy or custom." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 694). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, . . . and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality[.]" *Id.* at 1153 (internal citations omitted). "A municipality may [also] be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Plaintiff has failed to adequately allege that there was a constitutional violation surrounding his warrantless arrest. On that basis alone, his *Monell* claims against the City and the County are untenable. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, his *Monell* claims against the City and the County are DISMISSED WITHOUT LEAVE TO AMEND.

**V.      LEAVE TO AMEND**

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the Foman factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."

*Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

In the Order Granting Motions to Dismiss the Amended Complaint, Plaintiff was given sixty days to file a second amended complaint. ECF 74 at 8. Yet, Plaintiff has still failed to cure the deficiencies identified by the Court. Additionally, because Plaintiff has failed to allege that his challenged arrest was without probable cause and the facts alleged actually support the opposite conclusion, the Court finds that further amendment would be futile. Accordingly, the County's and City Defendants' motions to dismiss are GRANTED WITHOUT LEAVE TO AMEND.

## VI.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion to dismiss brought by the County of Santa Clara is GRANTED WITHOUT LEAVE TO AMEND.

(2) The motion to dismiss brought by the City of Morgan Hill, Morgan Hill Police Officers Scott Martin, Matthew Donatoni, Katrina Olson, and other unnamed police officers is GRANTED WITHOUT LEAVE TO AMEND.

Dated: May 20, 2025

BETH LABSON FREEMAN
United States District Judge